IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANABELA GARCIA,

        Plaintiff,

vs.                                                                   No.  01cv0936 JHG

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

        This matter is before the Court on Plaintiff's (Garcia's) Motion to Reverse Administrative Decision, filed May 30, 2002.  Garcia moves the Court to reverse the Commissioner's decision and find that she has been disabled since the alleged date of onset of disability, or, alternatively, to reverse the Commissioner's decision and remand the case.  The Commissioner of Social Security issued a final decision denying Garcia's application for disability insurance benefits and supplemental security income.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

        Garcia, now fifty-nine years old, filed her application for disability insurance benefits and supplemental security income on June 24, 1997, alleging disability since May 28, 1997, due to lumbar joint and disc disease, status post laminectomy and fusion surgeries.  Garcia has a high school education and past relevant work as a retail sales clerk and head housekeeper.  On June 23, 1999, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that

Garcia's impairments were severe but did not singly or in combination meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. The ALJ further found Garcia retained the residual functional capacity (RFC) for light work and could thus perform the requirements of her past relevant work. Tr. 16.  As to her credibility, the ALJ found Garcia's testimony was not wholly credible. *Id.*  Garcia filed a Request for Review of the decision by the Appeals Council.  On June 14, 2002, the Appeals Council denied Garcia's August 13, 1999 request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Garcia seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while

the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Garcia makes the following arguments: (1) the ALJ's finding that she had the RFC for light work is not supported by the evidence; and (2) the ALJ's finding that her testimony as to her pain was not credible is contrary to the record and not in accordance with the applicable law.

**RFC Determination**

In this case, the ALJ determined Garcia was not disabled at step four of the sequential evaluation process. At step four, a claimant bears the burden of proving that her medical impairments prevent her from performing work that she has performed in the past. *See Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). However, in order to make the ultimate finding that a claimant is not disabled at step four, the ALJ is required by the agency's rulings to make specific and detailed predicate findings concerning the claimant's residual functional capacity, the physical and mental demands of the claimant's past jobs, and how these demands mesh with the claimant's particular exertional and nonexertional limitations. *See* SSR 96-8p, 1996 WL 374184, SSR 82-62, at *4, *see also Winfrey v. Chater*, 92 F.3d 1017, 1023-25.

Here, the ALJ failed to make the detailed findings required by the regulations and rulings at step four. In arriving at an RFC, agency rulings require that an ALJ must provide a "narrative discussion describing how the evidence supports" his or her conclusion. *See* SSR 96-8p, 1996 WL 374184, at *7. The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Id. The ALJ must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved." Id. "The RFC assessment must

include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. The RFC assessment "must not be expressed initially in terms of the exertional categories of "sedentary [or] light; "rather, a function-by-function evaluation is necessary in order to arrive at an accurate RFC. Id. at *3.

Although the ALJ discussed Garcia's physical impairments, mental impairments, the medical evidence, activities of daily living[1], and Garcia's subjective complaints of pain and limitations, he failed to explain "the physical and mental demands of the claimant's past jobs, and how these demands mesh with the claimant's particular exertional and nonexertional limitations." *See* SSR 96-8p, 1996 WL 374184, SSR 82-62, at *4, *see also Winfrey*, 92 F.3d at 1023-25. In his Decision, the ALJ found "Her residual functional capacity is consistent with her work as a retail sales clerk and head housekeeper." Tr. 16. The ALJ cited to Exhibit 3E to support this finding. *Id.* This conclusory statement does not comply with what is required by the agency's rulings at step four of the sequential evaluation process. *See e.g., Henrie v. United States Dep't of Health and Human Services*, 13 F.3d 359, 361 (1993)(ALJ has the obligation to inquire into and make findings regarding the physical and mental demands of the claimant's past work.).

Dr. Doddy, a specialist in rehabilitation medicine and agency consultant, evaluated Garcia and completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). Dr. Doddy opined that Garcia could only stand for 20-30 minutes, walk for two hours and stand and walk with interruption for **4-6 hours.** Referring to Dr. Doddy's report, the ALJ found

---

[1] Statements regarding daily activities are evidence properly considered under the Commissioner's regulations. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a).

"[s]tanding was said to be possible, with reasonable changes of position, for four to six hours during a regular work day." Tr. 14. Therefore, the ALJ concluded Garcia could perform a full range of light work. The regulations define light work as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. **To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.**

20 C.F.R. § 404.1567(b)(emphasis added). The regulations define "frequent" as:

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two- thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately **6 hours of an 8-hour workda**y.

Social Security Ruling 83-10,1983 WL 31251 at *4 (emphasis added). Dr. Doddy specifically found Garcia was only capable of standing or walking with interruption for a total of four to six hours in an eight-hour workday. Tr. 175. Significantly, Dr. Doddy found Garcia could only stand for 20 to 30 minutes and walk for two hours. *Id.* Thus, it is questionable whether Garcia is capable of performing a full or wide range of light work if she can only stand or walk, off and on, for four hours in an eight-hour workday. *See Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987)(ALJ erred in assuming alternate sitting, standing, and walking allows one to perform a full range of light work).

Particularly troubling is a report by David Montoya, a Certified Vocational Evaluator, indicating Garcia is "not an appropriate candidate to work at her usual occupation in sales." Tr. 237. Mr. Montoya opined Garcia could not function as a retail sales clerk because the job of a

retail sales clerk is labor intensive and requires workers to be on their feet and walking constantly without the option of taking breaks every 20 to 30 minutes. Tr. 236. Moreover, Mr. Montoya opined a worker with a limitation of standing and walking between four to six hours in an eight hour work day also would not meet the essential functions of this kind of work. *Id.*

Based on the foregoing, the Court finds that the ALJ's RFC determination is not supported by substantial evidence and is contrary to law. Accordingly, the Court will remand this case to allow the ALJ to reconsider his RFC determination in light of Dr. Doddy's finding that Garcia can only stand or walk with interruption for four to six hours in an eight-hour workday. The ALJ should also determine the physical and mental demands of Garcia's past relevant work and how these demands mesh with her particular exertional and nonexertional limitations. If Garcia meets her burden of proving that she cannot perform her past relevant work, then the ALJ should consult with a vocational expert to determine if Garcia can perform other work.

**<u>Credibility determination</u>**

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). In this case, the ALJ affirmatively linked his findings to the evidence and will not be disturbed. *Talley v. Sullivan*, 908 F.2d 585 (10th Cir. 1990). Specifically, the ALJ found:

> During the hearing, Ms. Garcia demonstrated the same exaggerated symptoms noted by Dr. Doddy. She changed positions from standing to sitting frequently during the hearing, with exaggerated grimacing and other pain behaviors. She said

7

> that, on a scale of 0 to 10, her pain was at 10 during the hearing, and "all the time." I note this in comparison with the statement of her treating physician that she was "in no acute distress," although she moved slowly. Her testimony was that she had low back pain, neck pain, leg pain and cramps, shoulder pain and pain in her eyes. Yet, there is no record of any treatment procedures, except by the claimant's statements, prior to the filing of her application. She stood during most of the hearing, stating that she could not sit because of pain. Yet, Dr. Doddy said her capacity for sitting was not significantly impaired. When standing she was constantly leaning on the table or chair, as if for support. She said that she had to have her husband help her dress, and in getting in and out of the shower. Yet, despite her many complaints of pain, she apparently did not see any doctor for relief until after she applied for disability social security. She took no pain medications prior to seeing Dr. Lopez, who prescribed Tylenol #3, "as needed" (Exhibit 9E).

Tr. 14, 15. "Because '[e]xaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court, 'we generally treat credibility determinations made by an ALJ as binding upon review.'" *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988)(quoting *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). In this case, the record contains substantial evidence to support the ALJ's finding that Garcia's complaints of pain were somewhat exaggerated.

Pursuant to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the ALJ determined that Garcia's subjective claims of pain were not credible and considered such factors as (1) her attempts to find relief for her pain and her willingness to try any treatment prescribed; (2) her regular contact with a doctor; (3) her daily activities; and (4) the use of medication to relieve her pain and the dosage. *Id.* at 165-66. By her own admission, Garcia had not seen a physician since August of 1993. Tr. 125. Garcia also reported taking motrin for her pain (Tr. 143) and did not take Tylenol #3 until she saw Dr. Lopez in 1998. Dr. Doddy reported Garcia's impairment did not affect her sitting ability. Tr. 176. And, although Dr. Lopez submitted a letter stating Garcia

was "clearly no (sic) capable of sustaining gainful employment," a treating physician's opinion that a claimant is disabled is not dispositive. *See Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1029 (10th Cir. 1994).

Finally, Garcia argues the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanation that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Mem. in Supp. of Pl.'s Mot. to Reverse at 12-13 (quoting Social Security Ruling 96-7p). Garcia contends she "did not have the money to see a doctor all the time." *Id.* However, the record contains no evidence Garcia sought medical treatment but was refused for an inability to pay. *See, Galdean v. Chater*, 74 F.3d 1249, 1996 WL 23199, at \*\*2, (10th Cir. Jan. 1996)(unpublished disposition)(citing *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992)(failure to seek low-cost medical treatment and lack of evidence claimant had been denied medical care because of financial condition supports determination that claimant's financial hardship was not severe enough to justify failure to seek medical treatment). Accordingly, the Court finds substantial evidence supports the ALJ's finding that Garcia's testimony regarding the severity of her pain was not credible.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision, filed May 30, 2002, is granted. This matter is remanded to allow the

ALJ (1) to reconsider his RFC for light work in light of Dr. Doddy's finding that Garcia can only stand or walk with interruption for four to six hours in an eight-hour workday; (2) to determine the physical and mental demands of Garcia's past jobs and how these demands mesh with her particular exertional and nonexertional limitations; and (3) if necessary consult with a vocational expert to determine if Garcia can perform other work.

    A judgment in accordance with this Memorandum Opinion and Order will be entered.

_____
JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE